(52 South. 386.)

No. 18,066.

COLEMAN v. NEW ORLEANS RY. & LIGHT CO.

(May 9, 1910.)

*(Syllabus by the Court.)*

APPEAL AND ERROR (§ 1002*)—REVIEW—CONFLICTING EVIDENCE.

Where the evidence is conflicting, and the solution of the question of negligence depends on the credit to be attached to the testimony of witnesses, the judgment below will not be reversed, unless clearly contrary to the weight of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Richard Coleman against the New Orleans Railway & Light Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Henry O. Hollander, B. B. Howard, and Jewell A. Sperling, for appellant. Dart, Kernan & Dart, for appellee.

LAND, J. This is a suit for damages for personal injuries, in the shape of a broken arm, alleged to have been occasioned by the sudden starting of one of the defendant's cars as the plaintiff was attempting to board the same, at the corner of Camp and Lyon streets. The gist of plaintiff's complaint is that:

"While he was on the step of said car * * * the motorman started said car so violently and rapidly, so as to jerk and wrench petitioner's arm, breaking it and causing a fracture of the right forearm near the shoulder."

The defendant set up the usual defenses in cases of this kind, and specially averred that, if plaintiff was injured as alleged, the injury was due to plaintiff's own want of care in attempting to board one of the respondent's cars while in motion.

On the face of the record this is a case that might have been decided either way by the trial judge, hinging, as it does, on the credit to be attached to the testimony of the witnesses.

Plaintiff's version, corroborated in the main by the testimony of a woman friend, is that he was standing on the uptown crossing of Camp and Lyon, and signaled the motorman to stop; that the car came to a full stop, and that, as plaintiff put one foot on the step and grasped the handhold with one hand, the conductor rang the bell, and the car started suddenly, jerked his arm, and threw him up against the dashboard of the car, breaking his arm; that plaintiff told

the conductor that he had broken his arm, and the conductor replied that it was not his fault. On the third day after the accident the plaintiff signed a written statement reciting, among other facts, that the car slacked up, but never stopped, at the upper crossing of Lyon street. The woman witness also signed a statement at the same time containing a recital that when the car reached Lyon street it slowed up and a white man jumped off the car before the step reached the gutter bridge of the uptown side of Lyon street, and that she saw the conductor pull the bell strap, and by that time Richard Coleman had taken hold of the handbar on the body of the car, and jumped on the step, and remained on the step until the car reached Upperline street.

The defendant's surgeon testified that on the third day after the accident he visited the plaintiff, and found his arm bandaged as is usual in cases of fracture, and that he took down from plaintiff's dictation his account of how the accident happened. We quote as follows:

"He said it was still going slowly when he caught hold of the grab handle." "He said, before he could put his foot on the step, the conductor gave two bells, the car started rapidly ahead, and he was jerked upon the platform of the car."

The motorman of the car testified that he knew nothing of the accident, did not hear of it until the next day, and did not see any negro standing on the corner of Camp and Lyon streets.

The conductor's testimony may be stated in substance as follows:

There was a white passenger on the car who wished to get off at Lyon street, and the conductor gave the proper stop signal to the motorman. The car slowed down, and the passenger alighted at or near the lower crossing of Lyon street. As soon as he did so, the conductor gave the motorman two bells to go ahead, and when the car reached the upper crossing, the plaintiff jumped on the car and got on the platform, saying:

"You gave these two bells too quick."

The conductor replied:

"I didn't see you, my friend."

Plaintiff then said:

"I have got a sore arm already without that."

And the conductor replied that plaintiff could have waited until the car stopped. Plaintiff asked for a transfer, and the conductor gave him one. Plaintiff got in the car and sat down. He never said he was hurt, or anything of the kind.

The conductor made no report of the alleged accident, as is required by the rules of the company in all cases of personal injury, but treated the incident as a trivial matter, not worth mentioning even to the motorman.

The surgeon who bandaged plaintiff's arm was not called as a witness, and plaintiff testified that the same arm was broken at the same place about a year later as a result of a fall while walking on a sidewalk. Plaintiff's arm bone must have been unusually brittle to have been broken by the starting of the car. If plaintiff's foot was on the step, as he says, it seems that the sudden forward lurch would have thrown him backward, and not forward, as he stated.

The plaintiff is impeached to some extent by his statement that the car never *stopped*, and the declaration to the surgeon that the conductor gave two bells and the car started rapidly *before* he got his foot on the step. The woman's statement and her testimony also differ as to the stop of the car.

Considering the conflict in the evidence, and that the burden of proof is on the plaintiff, we are not prepared to hold that the judgment below is manifestly erroneous on the facts.

Judgment affirmed.